NOT DESIGNATED FOR PUBLICATION

No. 121,944

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JENNIFER L. GOODRO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed June 11, 2021. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Kimberly A. Rodebaugh*, senior assistant district attorney, *Thomas Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: The Reno County District Court denied Defendant Jennifer L. Goodro's motion to suppress drugs and paraphernalia taken from her when she was booked into jail following her arrest on a misdemeanor theft charge. In the district court and on appeal, Goodro contends her arrest violated K.S.A. 22-2401(c)(2) because the officer lacked probable cause to believe she could not have been later apprehended if she had simply been given a notice to appear on the misdemeanor; and, therefore, the drug evidence should have been suppressed as the product of an illegal seizure. We agree with

1

the district court's ultimate conclusion in denying the motion to suppress. Goodro's convictions and sentences stand.

## FACTUAL AND PROCEDURAL HISTORY

In late May 2018, Hutchinson Police Officer Raven Boettger was dispatched to a Walmart after store security personnel detained Goodro because they suspected she had tried to shoplift merchandise worth several hundred dollars. A security agent told Officer Boettger that Goodro had identified herself as Jennifer Zorn but had no photo identification. Officer Boettger read Goodro her *Miranda* rights and questioned her for about half an hour. Goodro told Officer Boettger her name was Jennifer Zorn, which was her birth name rather than her married name, and she again provided no documentary proof of her identity.

Officer Boettger requested a records check on Jennifer Zorn. From that check, Officer Boettger learned that "Jennifer Zorn" was an alias associated with a Jennifer Goodro and that Goodro had a conviction for theft and had previously failed to appear in court. Goodro told Officer Boettger she didn't want to be taken to jail because she had "transportation problems" and didn't know how she would get home to Lyons from the jail. Given the circumstances, Officer Boettger arrested Goodro and took her to the jail to be booked for what everyone agrees appeared to be a misdemeanor theft. See K.S.A. 2020 Supp. 21-5801(b)(4) (theft statute including classifications for felony and misdemeanor violations) As part of the booking process, jailers searched Goodro. Goodro had a small amount of methamphetamine and some pills identified as clonazepam in a container labeled for a different prescription drug.

The State charged Goodro with possession of methamphetamine, a felony; possession of drug paraphernalia, a misdemeanor; and misdemeanor theft. Through her lawyer, Goodro filed a motion to suppress the drugs and paraphernalia on the grounds her

arrest amounted to an improper seizure that, in turn, tainted the search at the jail. As we have indicated, Goodro relied on K.S.A. 22-2401(c)(2) limiting a law enforcement officer's authority to make an arrest for a misdemeanor to situations in which the officer has probable cause to believe the suspect: (1) "will not be apprehended . . . unless [he or she] is immediately arrested"; (2) may cause harm to himself or herself, another person, or to property; or (3) has intentionally harmed another person. Everyone agrees the motion turns on the first statutory ground permitting officers to make misdemeanor arrests.

Officer Boettger was the only witness to testify at the suppression hearing. She explained that she arrested Goodro for misdemeanor theft because Goodro provided a misleading last name, claimed transportation problems, and apparently had failed to appear in court at least once before. The district court issued a short written opinion denying the motion. The district court obviously credited Officer Boettger's testimony and specifically cited the reasons she gave as establishing probable cause for Goodro's arrest under K.S.A. 22-2401(c)(2)(A) because Goodro might otherwise not be apprehended.

In a bench trial on stipulated facts, Goodro was convicted of the three charges against her. Consistent with the sentencing guidelines, the district court imposed a prison term of 24 months on Goodro for the felony drug possession conviction with concurrent jail terms on the misdemeanor convictions and placed her on probation for 18 months with a condition that included mandatory drug treatment. Goodro has appealed.

LEGAL ANALYSIS

For her only issue on appeal, Goodro contends the district court erred in denying her motion to suppress. Goodro's conviction and sentence for misdemeanor theft, therefore, are not implicated in this appeal.

As Goodro has framed and argued the issue on appeal, she submits the evidence the State presented at the suppression hearing failed to establish probable cause for Officer Boettger to make a misdemeanor arrest rather than issuing her a notice to appear on the theft charge. See K.S.A. 2020 Supp. 22-2408 (procedure for issuing notice to appear without arrest on misdemeanors). Although Goodro explains that point, she neither cites any authority nor presents an argument for why a violation of K.S.A. 22-2401(c)(2) requires suppression of evidence uncovered as a result of the arrest. We could affirm the district court on that basis alone. See *State v. Kingsley*, 299 Kan. 896, 900, 326 P.3d 1083 (2014) (appellate court need not consider inadequately briefed issue). We do not choose that path.

In the district court, Goodro argued that an improper misdemeanor arrest under K.S.A. 22-2401(c)(2) amounts to an unreasonable seizure violating the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. The proposition is open to debate. See *Atwater v. City of Lago Vista*, 532 U.S. 318, 340-41 & n.11, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001); *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). But we assume Goodro's premise in addressing her appeal. So we consider whether Goodro's constitutional rights have been violated. We recognize the Kansas Supreme Court has consistently held the protections against unreasonable searches and seizures in § 15 of the Kansas Constitution Bill of Rights are no greater than those in the Fourth Amendment. See *State v. Daino*, 312 Kan. 390, 396, 475 P.3d 354 (2020); *State v. Ellis*, 311 Kan. 925, 929, 469 P.3d 65 (2020).

An arrest is indisputably a seizure governed by the Fourth Amendment. See *Torres v. Madrid*, 592 U.S. ___, 141 S. Ct. 989, 996, 209 L. Ed. 2d 190 (2021). To effect an arrest conforming to the Fourth Amendment, a law enforcement officer must have probable cause to believe the person seized has committed a crime. *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004). Probable cause refers to a

4

quantum of factual information that would cause a person of reasonable prudence to believe a proposition. *State v. Keenan*, 304 Kan. 986, 994, 377 P.3d 439 (2016); *State v. Ingram*, 279 Kan. 745, Syl. ¶ 6, 113 P.3d 228 (2005). Probable cause establishes something to be more than a reasonable suspicion but not so much as more probably true than not true. Goodro does not claim Officer Boettger lacked probable cause to believe she had shoplifted. Rather, she says Officer Boettger did not have probable cause to believe she could not be later apprehended if she were given a notice to appear for the misdemeanor theft charge, as outlined in K.S.A. 22-2401(c)(2)(A).

In assessing probable cause under the Fourth Amendment, district courts and appellate courts must consider how an objectively reasonable law enforcement officer would look at the known circumstances. *Devenpeck*, 543 U.S. at 153; *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996); *Keenan*, 304 Kan. at 994. The subjective belief or conclusion of the arresting officer is irrelevant. An objective reasonableness standard—common to many Fourth Amendment determinations—fosters a uniformity in outcomes across factually comparable cases that would be lost if the subjective beliefs of the government agents controlled. *Devenpeck*, 543 U.S. at 153; *State v. Beltran*, 48 Kan. App. 2d 857, 880-81, 300 P.3d 92 (2013).

When a defendant files a motion to suppress alleging a violation of his or her Fourth Amendment rights, the State bears the burden of proving a search or seizure to be constitutionally reasonable by a preponderance of the evidence. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). Here, the relevant facts all derive from Officer Boettger's testimony at the suppression hearing and are not materially disputed. What remains for us is functionally a question of law:  Based on the facts known to Officer Boettger, would an objectively reasonable law enforcement officer have probable cause to believe the person detained at the Walmart could not be apprehended later if she were immediately released with a notice to appear rather than being arrested and booked? See *Patterson*, 304 Kan. at 274 (when material facts bearing on search or seizure are

5

undisputed, constitutional propriety of government actor's conduct presents question of law).

Here, Officer Boettger confronted a female shoplifter without any photo identification who had presented herself to store security agents as Jennifer Zorn. She offered that misleading name to Officer Boettger. A law enforcement database linked the name as a likely alias for Jennifer Goodro. But even with that information, an objectively reasonable law enforcement officer would have had no way of confirming that the suspect detained at the store was *in fact* either Jennifer Zorn or Jennifer Goodro. The suspect may have (mis)appropriated those names and possibly other personal information, such as an address or birthday, of the real Jennifer Goodro precisely to stymie store personnel or law enforcement officers in the event of her detention for shoplifting.

Without some valid form of identification from the suspect, our hypothetical law enforcement officer would have had no reason, let alone probable cause, to believe issuing a notice to appear in the name of Jennifer Goodro would have been correct. The officer would have had only the suspect's word as to her true name. And that's not good enough. So the officer would recognize that the suspect probably could not be later apprehended if she were not actually Jennifer Goodro. Accordingly, viewed objectively, Officer Boettger had sufficient reason to arrest Goodro and have her booked on the misdemeanor theft charge consistent with both K.S.A. 22-2401(c)(2) and the Fourth Amendment. The booking process presumably confirmed Goodro's identity and generated information, such as mugshots and fingerprints, that could be used to establish the true identity of an unknown or deceptive arrestee.

Officer Boettger's stated concern that Goodro provided a misleading name and had no photo identification loosely tracks with the assessment an objectively reasonable law enforcement officer would make of the circumstances. The other reasons Officer

6

Boettger offered at the suppression hearing for arresting Goodro don't hold up as well. Goodro's ostensible transportation problems might increase the chances she wouldn't appear in court, assuming she were given a notice to appear or bonded out of jail after being arrested. But K.S.A. 22-2401(c)(2)(A) is specifically concerned with apprehending the individual—not his or her appearance in court. So if Officer Boettger were satisfied she knew who Goodro was and had an address for her, Goodro's claimed difficulties in later getting to court wouldn't justify the misdemeanor arrest. Likewise, a single previous failure to appear in court at some indeterminate time would not, standing alone, seem to furnish probable cause to arrest Goodro under K.S.A. 22-2401(c)(2)(A). See *State v. Hicks*, 282 Kan. 599, 616, 147 P.3d 1076 (2006) (defendant's three drug convictions between 6 and 28 years old did not support probable cause to believe drugs or contraband would be found at his home and, thus, district court's decision to issue search warrant).

Notwithstanding those deficiencies, the district court, at bottom, reached the correct legal conclusion in denying the motion to suppress the drugs and paraphernalia taken from Goodro when she was searched at the jail during the booking process. In turn, the State properly relied on that evidence to prosecute and convict Goodro.

Affirmed.